UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.: 25-cr-00078-CJN |
| | : | |
| JEAN WILTENE EUGENE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America now submits this sentencing memorandum for defendant Jean Wiltene Eugene. The government requests that this Court sentence defendant Eugene to 46 months' incarceration, a $20,000 fine, 36 months' supervised release, and a special assessment of $100. The government recommends this sentence at the low end of the advisory Guidelines' range of 46-57 months because Eugene engaged in serious criminal conduct in violation of laws that protect U.S. national security—including those that aim to stem the flow of firearms to the conflict-ravaged nation of Haiti—but he also accepted responsibility by pleading guilty and his criminal conduct is less serious than other defendants convicted of smuggling firearms to Haiti. Therefore, and as explained herein, the requested sentence would adequately serve the interests of justice as codified in 18 U.S.C. § 3553(a).

**PROCEDURAL HISTORY**

On April 29, 2024, defendant Eugene was charged by complaint with violations of the Arms Export Control Act, 22 U.S.C. § 2778, the Export Control Reform Act, 50 U.S.C. § 4819, and Smuggling, 18 U.S.C. § 554. Eugene was arrested in Key West, Florida on May 13, 2024, and had his initial appearance by video that same day before Magistrate Judge Moxila Upadhyaya.

On March 21, 2025, the Government filed a one-count Information charging Eugene with one violation of 18 U.S.C. § 554 in connection with a plea agreement. On April 11, 2025, Eugene

1

pled guilty to the charge in the Information and waived his right to indictment and trial by jury. The Court set sentencing for July 22, 2025.

## FACTUAL BACKGROUND

Defendant Eugene is a U.S. citizen who was born in Haiti and resides in Key West, Florida. Eugene owned and operated a gas station located in the Croix-des-Bouquets area to the east of Port-au-Prince, Haiti. As described below, Eugene smuggled firearms from the United States to Haiti on two separate occasions in February 2020 and September 2021 by hiding firearms inside vehicles he shipped to Haiti using other persons as the nominal shipper and, in one instance, the nominal consignee.

### *Eugene's Firearms Purchases*

On five separate occasions between May 2015 and May 2020, Eugene purchased at least nine firearms from a licensed firearms dealer, including seven semi-automatic handguns and two semi-automatic rifles, as follows:

| Make | Model | Caliber | Serial Number | Location | Date |
|---|---|---|---|---|---|
| Glock | 19 | 9mm | YSX120 | Key West, FL | 5/4/2015 |
| Rock Island Armory | M1911-A1 | 9mm | RIA1610887 | Key West, FL | 5/4/2015 |
| FMK | 9C1G2 | 9mm | BB5410 | Key West, FL | 2/22/2016 |
| Kahr Arms | CW9 | 9mm | EK4644 | Key West, FL | 2/22/2016 |
| Hecklor & Koch | MR556 | 5.56mm | 241202375 | Key West, FL | 2/22/2016 |
| Smith & Wesson | M&P | 0.45 | MRD5674 | Key West, FL | 2/2/2017 |
| Glock | 21 | 0.45 | XUF673 | Key West, FL | 3/14/2018 |
| Century Arms | VZ2008 | 7.62x39mm | VZ04667 | Key West, FL | 5/8/2020 |
| Sig Sauer | M11-A1 | 9mm | 45A054134 | Key West, FL | 5/8/2020 |

On each of the five dates on which Eugene purchased firearms, he filled out Form 4473, Firearms Transaction Record, as a condition of sale. The version of Form 4473 in effect between October 2016 and May 2020 stated under "notices, instructions, and definitions" on page 3 of the 6-page form:

> **Exportation of Firearms**: The State or Commerce Departments may require a firearms exporter to obtain a license prior to export. **Warning**: Any person who exports a firearm without proper authorization may be fined not more than $1,000,000 and/or imprisoned not more than 20 years. See 22 U.S.C. 2778(c).

The version of Form 4473 in effect between April 2012 and October 2016 gave a slightly different warning under "notices, instructions, and definitions":

> **Exportation of Firearms**: The State or Commerce Departments may require you to obtain a license prior to export.

Both of the versions of Form 4473 in effect between April 2012 and May 2020 included the following statement in bold at the top of the first page of the form:

> **WARNING: You may not receive a firearm if prohibited by Federal or State law. The information you provide will be used to determine whether you are prohibited from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921** *et. seq.*, **are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.**

Both of the then-effective versions of Form 4473 also included a warning in bold at the top of the first page of the form to "[r]ead the notices, instructions, and definitions on this form."

### *Shipments of Firearms and Ammunition to Haiti*

On or about September 23, 2021, Eugene arranged to ship a 2007 Toyota Rav 4 from Fort Lauderdale, Florida, to St. Marc, Haiti. That vehicle contained firearms, as well as magazines and ammunition, in a bin placed in the rear passenger area of the vehicle. To hide the firearms and ammunition and evade detection from border authorities, Eugene placed food and other items

3

around the bin. Eugene used the name of another person to ship the vehicle with a different person listed as the consignee.

In addition, on or about February 10, 2020, Eugene arranged to ship a 2003 Mitsubishi Fuso from Port Everglades, Florida, to St. Marc, Haiti. That vehicle also contained firearms hidden in the interior of the vehicle. Eugene used the name of another person to ship the vehicle to himself as the consignee in Haiti.

### *Eugene's Statements to Law Enforcement Regarding Firearms Smuggling*

In March and April 2022, Eugene spoke twice with law enforcement in consensual, non-custodial interviews. In the first interview on or about March 18, 2022, Eugene initially stated that he had "accidentally" sent firearms to Haiti by putting them in a vehicle that he shipped to Haiti in February 2020, after which he also stated that he had shipped weapons to Haiti in a vehicle on a second occasion. After being confronted by law enforcement regarding the inaccuracies in his statement and warned that making a false statement to federal agents was a crime, Eugene admitted that he had smuggled export-controlled firearms from the United States to Haiti on two occasions—in approximately February 2020 and in approximately September 2021.

Thereafter, Eugene signed a statement that he had shipped weapons to Haiti on two occasions and that he knew these shipments were illegal. Eugene also provided records to law enforcement about the shipments, as well as photographs of the firearms he had shipped to Haiti.

In the second interview on or about April 11, 2022, Eugene stated that he used unwitting associates when he shipped the vehicles to Haiti with firearms hidden inside. Eugene also stated that all of the firearms he had purchased in his name were currently located at his gas station in Haiti, where they were in the possession of his employees, and that the sole purpose of the shipments were to arm his employees at his gas station with weapons so they could protect the gas

station. Eugene also stated that no gangs or politicians had requested he smuggle guns to Haiti. Eugene again stated that he knew that it was illegal to ship weapons to Haiti without a license.

## SENTENCING CALCULATION

### A. STATUTORY MAXIMUM

A violation of 18 U.S.C § 554 carries a maximum sentence of 10 years; a fine of not more than $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b); and a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

### B. SENTENCING GUIDELINE CALCULATION

The plea agreement conveys the parties' assessment that the offense of conviction carries a base offense level of 26 under U.S.S.G. § 2M5.2(a)(1) because it involves the export of more than two non-fully automatic firearms. The parties agree that, pursuant to U.S.S.G. § 3E1.1, a reduction of a total of three levels is appropriate due to the defendant's acceptance of responsibility and his early interest and subsequent acceptance of a plea which allowed the government to avert preparations for trial and the Court to efficiently allocate resources.

The parties agree that no other offense level adjustments apply. In particular, the defendant is not eligible for the zero-point offender adjustment under U.S.S.G. § 4C1.1 because he received one criminal history point (as described below) and because he transported firearms in connection with the offense. *See* U.S.S.G. §§ 4C1.1(a)(1) & (7).

Defendant Eugene was previously convicted of engaging in bulk cash smuggling, in violation of 31 U.S.C § 5332. *See United States v. Eugene*, Case No. 23-cr-20427 (S.D. Fla.). In that case, Eugene was departing for Port-au-Prince, Haiti from Miami International Airport and declared that he had $12,500 in U.S. currency, despite possessing a total of $82,560 in U.S. currency. On May 13, 2024, Defendant Eugene was sentenced to time served (one day) and two

years of supervised release. Accordingly, the defendant receives one criminal history point and is in Criminal History Category I.

Based on the above calculations for the defendant—Offense Level 23 and Criminal History Category I—the parties estimated the applicable Sentencing Guidelines range to be 46 to 57 months and a fine of between $20,000 and $200,000.[1] Under the plea agreement, the parties agreed that a sentence within the estimated Sentencing Guidelines range would constitute a reasonable sentence in light of the factors set forth in 18 U.S.C. § 3553(a).

The Presentence Report writer confirms these estimates.

## **SENTENCING RECOMMENDATION**

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall,* 552 U.S. 38, 49 (2007). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark." *Id.* at 46-49. The district court should next consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49-50. Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a). *United States v. Rita*, 551 U.S. 338, 347-50 (2007).

The § 3553(a) factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related

---

[1] The plea agreement incorrectly noted that the defendant's applicable fine range would be $25,000 to $250,000, when at offense level 23 it is, in fact, $20,000 to $200,000.

6

Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities.

### A. AN ANALYSIS OF THE 18 U.S.C. § 3553(a) FACTORS DEMONSTRATES THAT A SENTENCE OF 46 MONTHS IN PRISON FOR THE DEFENDANT IS APPROPRIATE

The Government recommends that the defendant be sentenced to a period of 46 months' incarceration, which is at the low end of the applicable Sentencing Guidelines range. In addition, should the Court determine that the defendant has the ability to pay a fine, the Government also recommends that his sentence include a fine of $20,000, also at the low end of the applicable Guidelines range. A guidelines-compliant sentence is appropriate where, as here, no downward departure is warranted under the Sentencing Guidelines, and an analysis of the § 3553(a) factors reveals no reason to vary from the carefully constructed and longstanding Guidelines.

#### 1. The Nature and Circumstances of the Offense

The nature and circumstances of the defendant's offense are serious. The Export Control Reform Act of 2018 authorizes the Department of Commerce to prohibit certain items to be exported from the United States to foreign countries without a license through the Export Administration Regulations ("EAR"). In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. *Cf. United States v. Sotis*, 89 F.4th 862, 879-80 (11th Cir. 2023) (holding that the EAR "is clearly a system of 'national security controls'" in light of its stated purpose "to serve the national security, foreign policy, nonproliferation of weapons of mass destruction, and other interests of the United States") (citing 15 C.F.R. § 730.6). The items the defendant purchased for export—semi-automatic firearms and ammunition—are among the most sensitive items subject to the EAR controls. Among other reasons, such firearms are controlled for national security, regional stability and anti-terrorism

reasons. In other words, violating the export control laws constitutes a serious criminal offense because those laws help protect the national security and economy of this country, and impact our foreign policy with other nations—in particular, the important U.S. interest in preventing the unlicensed proliferation of firearms to Haiti.

The U.S. Sentencing Commission has recognized the seriousness of violations which threaten security or foreign policy interests of the United States. *See* § 2M5.2, Application Note 2. In particular, that application note states that "[t]he base offense level [under § 2M5.2] assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States." In only "unusual cases" would such an offense pose no risk to U.S. security or foreign policy interests. *Id.* In this case, the United States has important national security interest in maintaining internal security and stability in Haiti, and the principal threat to that stability is the threat posed by individuals armed with firearms smuggled into Haiti. Of note, in a recent sentencing hearing in this District where a defendant was convicted of leading a conspiracy to smuggle firearms to Haiti, Judge John D. Bates emphasized that the shipment of firearms to Haiti warranted serious reflection, stating that "I do think that one has to take account of the national security implications of supplying these kinds of weapons illegally without the kind of authorization and paperwork that is required, real national security implications to be mindful of." Transcript of Sentencing of Eliande Tunis, at 102 (June 5, 2024), *United States v. Tunis*, 21-cr-699-002-JDB (D.D.C.). Indeed, U.S. Secretary of State Marco Rubio noted on May 2, 2025, in announcing that two Haitian gang coalitions were designated as Foreign Terrorist Organizations,

that "instability and violence in Haiti" is "a direct threat to U.S. national security interests in our region."[2]

Moreover, even relatively modest amounts of firearms can threaten U.S. interests, especially in a country like Haiti. Indeed, the national security interests reflected in the applicable Guidelines provision, § 2M5.2, note that while "the volume of commerce involved" can assist the Court "[i]n determining the sentence *within* the applicable guideline range," a departure is only warranted "[w]here such factors are present in an extreme form." In other words, because § 2M5.2(a)(1) already provides for a base offense level of 26 for any relevant offense involving the export of more than two non-fully automatic firearms, the fact that a defendant exported only a modest volume of firearms in violation of U.S. law is not an appropriate basis to vary downward, but instead can support a sentence at the low end of the applicable Guideline range. Accordingly, the Government here requests that Eugene be sentenced within the applicable Guideline range. By imposing such a sentence, the Court would send a message that the United States takes these violations seriously, while also accounting for the relatively modest volume of firearms exported by defendant Eugene.

### 2. The History and Characteristics of the Offender

Defendant Eugene's history and characteristics do not warrant a variance under 18 U.S.C. § 3553(a)(1). He is a naturalized U.S. citizen who is engaged in several different areas of employment, including working at a restaurant and as a rideshare driver, operating a market and gas station he owns in Haiti, and renting rooms at his home in Key West, Florida. He speaks fluent English, French, and Haitian Creole, and appears to be a hard-working, intelligent, and

---

[2] Press Statement, Terrorist Designations of Viv Ansanm and Gran Grif (May 2, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/05/terrorist-designations-of-viv-ansanm-and-gran-grif/.

entrepreneurial individual. He has a large and supportive family. As demonstrated by the substantial income defendant Eugene reported from legal employment in connection with his Presentence Report—which appears to be at least $8,000 per month (or at least $96,000 per year) from his rideshare job and rental income—it is clear that Eugene is capable of making a good living through non-criminal means.[3]

### 3. The Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public.

Deterrence and promoting respect for the law should be the principal goals of the Court's sentence in this case. In order to promote respect for the law, it is necessary and appropriate to impose a meaningful sentence. Eugene purchased multiple firearms and then smuggled them from the United States to Haiti, knowing full well that doing so was in violation of U.S. law. A sentence that is too lenient would convey the wrong message and could create the misimpression to others that illegally exporting firearms to Haiti is worth the risk of getting caught by U.S. law enforcement and facing a relatively minor penalty. Instead, the Court should send a message to those who would further destabilize Haiti by bringing even more guns into the country that violations of U.S. law will be punished seriously.

### 4. The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

The starting point in the Court's analysis under § 3553(a)(6) should be to consider the sentences of "defendants with similar records who have been found guilty of similar conduct." 18

---

[3] In addition, while the Government acknowledges the Presentence Report writer's recommendation that "it is unlikely the defendant will have the ability to pay a fine" based on his financial information and the 'potential loss of income if a custodial sentence is imposed," Presentence Report (Dkt 39), at ¶ 96, the Government notes that it is unclear whether the defendant's rental and business income will be meaningfully affected by a custodial sentence. *See id.* ¶¶ 86-87.

U.S.C. § 3553(a)(6). Recent cases in this District in which defendants were convicted of smuggling firearms to Haiti support a within-Guidelines sentence of 46 months for Eugene. In *United States v. St. Louis*, 21-cr-699-004-JDB, another court in this District sentenced Walder St. Louis to 36 months' imprisonment for his role in a conspiracy to smuggle high-powered firearms to Haiti for the violent gang 400 Mawozo. Unlike his co-defendants, St. Louis "did not have significant communications displaying his support of the gang" and was "the subject of serious threats to the life of his family . . . which he stated was the reason he provided assistance in the scheme." Government's Memorandum in Aid of Sentencing & Motion under U.S.S.G. § 5K1.1, at 11, 21-cr-699 (Dkt. 176) (Mar. 8, 2024). Based on his role, like Eugene, St. Louis faced a Guidelines range of 46 to 57 months. Notably, the Government's position at sentencing was that a 48-month sentence "would be appropriate but for the government's motion under U.S.S.G. § 5K1.1." *Id.* at 7. Although no two defendants are ever truly similarly situated, Eugene's culpability is analogous to St. Louis's and a comparable sentence is warranted—while a difference of 12 months would be warranted based on the § 5K1.1 motion filed by the Government for St. Louis.

Notably, St. Louis's co-defendant, Jocelyn Dor, received a longer sentence of 60 months to reflect his more serious involvement in the scheme. Dor purchased a total of ten semi-automatic firearms at the direction of the leader of 400 Mawozo, received an obstruction enhancement at sentencing, and did not benefit from a Government motion under § 5K1.1. Unlike St. Louis, Dor also expressed his support for 400 Mawozo and did not act under any real or perceived threat. Dor's sentence of 60 months also fell within the applicable Guidelines range of 57 to 71 months.[4]

---

[4] Dor's other co-defendants, Eliande Tunis and Joly Germine, received sentences of 150 months (12.5 years) and 420 months (35 years), respectively, based on their leadership roles, obstruction of justice, lack of acceptance of responsibility, and (for Germine) involvement in related hostage taking activity.

Other firearms-smuggling sentences imposed outside this District support finding that a 46-month sentence for defendant Eugene is appropriate. For example, in *United States v. Tita*, three co-defendants were convicted at trial in the District of Maryland for their involvement in a scheme to smuggle at least 38 firearms (including sniper rifles, assault rifles, and handguns) to separatists fighting the government of Cameroon. Each of the defendants was convicted of conspiracy in violation of 18 U.S.C. § 371, transporting firearms with obliterated serial numbers in violation of 18 U.S.C. § 922(k), and smuggling firearms and ammunition from the United States to Nigeria in violation of 18 U.S.C. § 554(a). *See United States v. Tita, et al.*, Case No. 21-cr-334 (D. Md.). The defendants were acquitted of charges under the Arms Export Control Act and the Export Control Reform Act. The court sentenced each of the three co-conspirators to 63 months imprisonment and two years of supervised release. *See* Dkt. 184 (Judgment as to Eric Fru Nji); 201 (Judgment as to Wilson Nuyila Tita); and 221 (Judgment as to Wilson Che Fonguh). Notably, the co-conspirators in *Tita* were smuggling firearms and ammunition to separatists fighting against the government of Cameroon.

In addition, cases with smaller numbers of firearms than the volume smuggled by Eugene have also resulted in significant sentences. For example, in *United States v. Barba*, No. 23-40312, 2024 WL 701528, at *1 (5th Cir. Feb. 21, 2024), the Fifth Circuit affirmed a sentence of 36 months based on a modest downward departure from a Guidelines range of 46 to 57 months under § 2M5.2(a)(1) where the defendant had exported to Mexico "two non-fully automatic pistols and 550 rounds of ammunition." Similarly, in *United States v. Francois*, 661 Fed. App'x 587, 591 (11th Cir. 2016), the Eleventh Circuit upheld a 36-month sentence based on a modest downward variance from a Guidelines range of 46 to 57 months under § 2M5.2(a)(1), despite the defendant's argument that his "offense involved 'only' four handguns" smuggled to Haiti, noting in particular

that the defendant "indicated that he was familiar with gun smuggling and that he intended to smuggle guns in the future." Accordingly, the sentences received by similarly situated defendants—as well as the more severe sentences received by more culpable defendants—counsel in favor of a 46-month sentence for defendant Eugene at the low end of his applicable Guidelines range.

## CONCLUSION

The government recommends a sentence of incarceration at the low end of the defendant's guidelines range, specifically 46 months of incarceration, a fine of $20,000, 36 months of supervised release, and a $100 special assessment.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

Kimberly L. Paschall
D.C. Bar No. 1015665
Assistant United States Attorney
National Security Section
601 D Street, N.W.
Washington, D.C.  20530
Office: (202) 252-2650
Kimberly.paschall@usdoj.gov

JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL

By:    /s/ Beau D. Barnes
Beau D. Barnes
D.C. Bar No. 1024150
Trial Attorney
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
(202) 305-4679
Beaudre.barnes@usdoj.gov